IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANIE L. MCCURDY,                              )
                                               )
              Plaintiff,                       )
                                               )
    -vs-                                        )
                                                 Civil Action No.  04-86
                                               )
ECHOSTAR COMMUNICATIONS CORPORATION    )
a/k/a ECHOSTAR SATELLITE CORPORATION a/k/a )
ECHOSPHERE CORPORATION,                        )
                                               )
              Defendant.                       )

AMBROSE, Chief District Judge.


**OPINION**
**AND**
**ORDER OF COURT**

Plaintiff, Janie McCurdy ("Plaintiff"), initiated this action against her former

employer, Defendant Echostar Communications Corporation ("Defendant" or

"Echostar"), alleging discriminatory treatment  in violation of the Americans with

Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Pennsylvania Human

Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), as well as conduct in violation of the

Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA") and the Employee

Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*("ERISA").[1]

Pending before the Court are two Motions for Partial Summary Judgment.

---

[1]  In her Amended Complaint, Plaintiff also alleged that she was wrongfully discharged in
retaliation for attempting to exercise rights under Pennsylvania's Wage Payment and Collection
Law.  I dismissed this count on June 28, 2004.  (Docket No. 17).

Plaintiff has filed a Motion seeking an entry of Summary Judgment in her favor as to liability on her FMLA claims. (Docket No. 23). Defendant has filed a Motion seeking Dismissal of Plaintiff's ADA, PHRA, and FMLA claims in their entirety. (Docket No. 25).[2] Also before the Court are several Motions to Strike and other Motions concerning what should constitute the record on summary judgment. (Docket Nos. 33, 43, 38, 51, 56, 64).

After careful consideration of the parties' submissions and for the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is denied. Defendant's Motion for Partial Summary Judgment is granted in part and denied in part. The remaining Motions are granted in part and denied in part as set forth below.

## I. <u>PROCEDURAL HISTORY</u>

For purposes of ruling upon the pending Motions, the following procedural history is relevant.

On January 21, 2004, Plaintiff filed a Complaint against Defendant. (Docket No. 1). Plaintiff moved to amend her Complaint on May 10, 2004. (Docket No. 11). Leave was granted and Plaintiff's Amended Complaint was deemed filed on May 13, 2004. (Docket No. 12). Defendant answered Plaintiff's Amended Complaint on June 2, 2004. (Docket No. 15).

On January 18, 2005, Plaintiff filed her Motion for Partial Summary Judgment, Brief in Support, and Concise Statement of Material Facts. (Docket Nos. 22-24). On

---

[2] Neither party has moved for summary judgment on Plaintiff's ERISA claim.

February 28, 2005, Defendant filed a Response to Plaintiff's Statement of Material Facts and Brief in opposition to Plaintiff's Motion. (Docket Nos. 34-36). Plaintiff filed a Reply Brief on March 8, 2005 and an amended Reply Brief on July 7, 2005. (Docket Nos. 41, 72). On January 31, 2005, Defendant filed its Motion for Partial Summary Judgment, Brief in Support, and Concise Statement of Material Facts. (Docket Nos. 25-28). On February 28, 2005, Plaintiff filed a Brief in Response and Responsive Concise Statement of Material Facts in opposition to Defendant's Motion. (Docket Nos. 31-32). Defendant filed a Reply Brief and Response to Plaintiff's Responsive Concise Statement of Material Facts on March 15, 2005. (Docket Nos. 45-47).

In addition, the parties have filed the following motions and responses:

On February 28, 2005, Defendant filed a Motion to Strike paragraphs 5, 6, 12-15 of Plaintiff's affidavit and Plaintiff's attorney's entire affidavit. (Docket No. 33). Plaintiff filed a Brief in Opposition on March 8, 2005. (Docket No. 39).

On March 8, 2005, Plaintiff filed a Motion to Strike Portions of the Verifications of Charlene Dolfi and Richard Schanz and Portions of Defendant's Response to Plaintiff's Statement of Material Facts, Appendix, and Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment and supporting brief. (Docket Nos. 38, 40). Defendant filed a Brief in Opposition on March 21, 2005. (Docket No. 53).

On March 15, 2005, Defendant filed a Second Motion to Strike and Brief in Support. (Docket Nos. 43-44). Plaintiff filed a Response in Opposition on March 21, 2005. (Docket No. 49).

On March 21, 2005, Plaintiff filed a Request for Mandatory Judicial Notice Under Fed. R. Evid. 201(d) with Supporting Discussion of Law , in which she asks me to take judicial notice of certain information regarding cancer. (Docket No. 51).

Defendant filed an Opposition to Plaintiff's Motion on April 1, 2005.  (Docket No. 62).

On March 25, 2005, Plaintiff filed Amended Objections to the Vocational Report of Cascade Disability Management, Inc. (a report offered by Defendant).  (Docket No. 56).  On April 11, 2005, Defendant filed a Motion for Leave to Amend Exhibit F of Its Appendix to Defendant's Response to Plaintiff's Responsive Concise Statement of Material Facts in Opposition to Defendant's Motion for Partial Summary Judgment to add a verification to the vocational report at issue.  (Docket No. 64).  On that same date, Defendant filed a Brief in Opposition to Plaintiff's Amended Objections to the Vocational Report and in Support of Its Motion for Leave to Amend Its Appendix. (Docket No. 65).  On April 19, 2005, Plaintiff filed a Response in Opposition to Defendant's Motion for Leave to Amend. (Docket No. 69).

All of the Motions are now ripe for my review.

## II.   MOTIONS TO STRIKE AND OTHER MISCELLANEOUS MOTIONS

I first will consider Plaintiff's and Defendant's Motions to Strike; Plaintiff's Request for Mandatory Judicial Notice Under Fed. R. Evid. 201(d); and both parties' motions related to the Vocational Report of Cascade Disability Management, Inc., since they bear on what will comprise the record to which I may look in ruling on the pending motions for summary judgment.  I will address each Motion in turn.

## A.  DEFENDANT'S FIRST MOTION TO STRIKE

In its first Motion to Strike (Docket No. 33), Defendant asks me to strike paragraphs 5-6 and 12-15 of Plaintiff's declaration attached as Exhibit 32 to her Concise Statement of Material Facts in Support of her Motion for Summary Judgment.  (Docket No. 22).  Defendant argues that in paragraphs 5 and 6, Plaintiff

improperly attempts to "provide a medical opinion by causally relating her alleged symptoms and unexcused absences to her cancer diagnosis, which she is not competent to do." Def.'s Br. in Supp. (Docket No. 34) at 12.  Defendant argues that paragraphs 12-15 should be stricken because they contain speculative and conclusory statements and attempt to decide an ultimate issue in the case – i.e., whether Plaintiff suffered prejudice as a result of Defendant's alleged failure to provide her written notice of her FMLA rights.  Id.

With the exception of a portion of paragraph 12 of the Declaration, this portion of Defendant's Motion to Strike is denied. Plaintiff's statement in paragraph 5 is not an improper attempt to provide a medical opinion.  Rather, it merely describes how Plaintiff's symptoms affected her ability to work.  Paragraph 6 does not even arguably contain a medical opinion.  Rather, it simply recites what Plaintiff contends she said to HR Specialist Charlene Dolfi when she spoke to her on September 20, 2002.  I agree with Defendant, however, that Plaintiff's statement in paragraph 12 that she has "no reason to believe" that one or more of her doctors "would not have immediately have completed the [FMLA] Health Care Certificate, especially if I explained to them that Echostar intended to fire me if the form was not completed," is speculative and not based on first-hand knowledge.  Thus, Defendant's Motion to Strike this portion of paragraph 12 is granted.  Defendant's Motion is denied with respect to the remainder of paragraph 12 and paragraphs 13-15.  Contrary to Defendant's assertions, these paragraphs are simply factual recitations (¶ 15) and/or proper evidence that Plaintiff was prejudiced by

Defendant's alleged failure to provide her with the requisite FMLA notice (¶¶ 12-14). See Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004); Reid-Falcone v. Luzerne County Cmty. Coll., No. 3:CV-02-1818, 2005 WL 1527792 (M.D. Pa. June 28, 2005).   Whether or not Plaintiff's statements are credible and/or are contradicted by other evidence of record are issues of fact for the jury to resolve.

Defendant also asks me to strike the declaration of Plaintiff's counsel, Charles Lamberton. (Docket No. 22, Ex. 23).   See Def.'s Opp. Br. (Docket No. 34) at 11 n.3. Defendant suggests that Mr. Lamberton is improperly attempting to authenticate Echostar documents, opine on Echostar's legal theories, and act as both counsel and a fact witness. Id.  This portion of Defendant's Motion is denied as moot.  Nothing in the body of the declaration sets forth a material fact relevant to the summary judgment analysis.  In addition, the documents attached to the Declaration either would not affect my ruling on summary judgment (e.g., the EEOC Position Statement) and/or are already contained elsewhere in the record.  See, e.g., Verification of Richard Schanz (Docket No. 36, Ex. B) (attaching same e-mails attached as Ex. 1 to Lamberton Decl.).[3]

## B.  DEFENDANT'S SECOND MOTION TO STRIKE

In its second Motion to Strike (Docket No. 43), Defendant asks me to strike

---

[3]  Even if the Lamberton Declaration were critical to the outcome of the summary judgment motions, Defendant's Motion would be denied.  The purpose of the four-paragraph declaration appears simply to be to identify certain documents produced by Defendant in discovery and make them part of the summary judgment record.  See Lamberton Decl. ¶¶ 3-4.  Generally, an affidavit of counsel is a legitimate and commonly-used means to achieve this purpose.  In re Asbestos Sch. Litig., No. 83-0268, 1991 WL 134322 (E.D. Pa. July 10, 1991); In re Greenwood Air Crash, 924 F. Supp. 1511, 1514-15 (S.D. Ind. 1995).

from the record the portions of (1) Plaintiff's Reply Brief to Defendant's Brief in Opposition to Plaintiffs Motion for Partial Summary Judgment; (2) Plaintiff's Responsive Concise Statement of Material Facts in Opposition to Defendant's Motion for Partial Summary Judgment; and (3) Plaintiff's Brief in Response and Opposition to Defendant's Motion for Partial Summary Judgment.

Defendant moves that Plaintiff's entire Reply Brief be stricken because it exceeds my five-page limit for Reply Briefs.  This portion of Defendant's Motion is denied as moot because Plaintiff (with leave) has filed an amended brief that complies with the applicable page limitations.  (Docket No. 72).  In addition, Defendant has withdrawn the portion of its Motion to Strike related to Plaintiff's explanation of a cell's "life process."  (Docket No. 62 at 2 n.1).

The remainder of Defendant's second Motion to Strike is denied as moot because the portions of the record to which Defendant objects, including references to a second  medical slip allegedly delivered to Defendant by Janice Bell, are not material to my ruling on the parties' summary judgment motions.  If Defendant objects to the use of similar evidence at trial, it may raise those objections later through an appropriate pretrial motion.

### C. PLAINTIFF'S MOTION TO STRIKE

Plaintiff moves to strike portions of the Verifications of HR Specialist Charlene Dolfi and Plaintiff's supervisor Richard Schanz[4] as well as portions of Defendant's

---

[4]  Dolfi's and Schanz's Verification are attached as Exhibits D and B, respectively, to the Appendix to Defendant's Brief in Opposition to Plaintiff's summary judgment motion (Docket No. 36).

Response to Plaintiff's Statement of Material Facts, Appendix, and Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment. (Docket No. 38). Plaintiff's Motion is denied.

As an initial matter, to the extent Plaintiff alleges Defendant failed to comply with the Local Rules and/or my internal Practices and Procedures regarding the creation of a summary judgment record, Defendant has cured any such technical defects by filing an amended Statement of Material Facts. (Docket No. 52).

Plaintiff's Motion to Strike Dolfi's Verification is denied because the verification does not, as Plaintiff contends, contradict Dolfi's deposition testimony that she does not specifically recollect alleged telephone conversations with Plaintiff regarding Plaintiff's absences and/or FMLA leave. Dolfi's verification simply states that although she does not recall her specific conversations with Plaintiff, she never made any of the alleged statements to any Echostar employee. Whether or not Dolfi's position is credible is an issue for the fact-finder.

Plaintiff objects to the portion of Schanz's Verification attaching a series of purported e-mail exchanges among Echostar management concerning Plaintiff and her absences. Plaintiff argues that the e-mails must be stricken because Schanz lacks personal knowledge regarding their contents; Defendant has failed to authenticate them; and they contain multiple layers of hearsay. This portion of Plaintiff's Motion is denied on several grounds. First, Plaintiff herself has included copies of the very same e-mails in her Appendix in support of summary judgment. (Docket No. 22, Ex. 23). Second, my finding that there are genuine issues of material fact with respect

to Plaintiff's ADA and FMLA claims would be the same irrespective of the e-mails.

Finally, Plaintiff's argument that Defendant's use of "denied as stated" in response to certain of Plaintiff's statements of material fact is without merit.

## D.  **PLAINTIFF'S REQUEST FOR MANDATORY JUDICIAL NOTICE UNDER FED. R. EVID. 201(D)**

In her Request for Mandatory Judicial Notice ("Pl.'s Req.") (Docket No. 51), Plaintiff asks me to judicially notice a considerable body of information concerning cancer.  This information includes:  nine dictionary definitions of cancer (Pl.'s Req. Ex. 1); certain facts contained in the Mission Statement of the National Cancer Institute ("NCI") (Pl.'s Req. Ex. 2); four NCI reports regarding cancer in general, breast cancer, and the cancer treatment drug Tamoxifen (Pl.'s Req. Exs. 3-5, 7); and a Food and Drug Administration report regarding the cancer treatment drug Armidex (Pl.'s Req. Ex. 8).  Plaintiff also requests that I notice the "fact" that "[t]he probability of death within five years of diagnosis of regional breast cancer for a white female over the age of 50 is 18.4%."  Pl.'s Req. at 3 (¶ 6) (citing a Cancer Statistics Review published by an NCI branch).  Plaintiff argues that judicial notice of this information is mandatory under Federal Rule of Evidence 201(d).[5]

As an initial matter, Defendant does not contest Plaintiff's Request to the extent it pertains to the definition of cancer.  Def.'s Opp. at 2.  Thus, Plaintiff's

---

[5]  Rule 201 provides that "[a] judicially noticed fact must be one that is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Rule 201(d) requires that courts take judicial notice of such facts "if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  A court may take judicial notice "at any stage of the proceeding."  Fed. R. Evid. 201(f).

Request is granted with respect to the definitions of cancer attached as Exhibit 1 to the Request.  Defendant also does not object to me applying my discretion and considering any of the "facts" attached to Plaintiff's Request for purposes of summary judgment only.  Id. at 6.  Thus, Plaintiff's Request is also granted to this limited extent.  Defendant does object, however, to the extent Plaintiff is asking that I judicially notice the facts contained in the NCI and FDA reports for use at trial. Defendant argues that due to the large volume of information contained in the reports and Plaintiff's lack of specificity as to the particular facts within those reports she intends to use, it is unable to adequately address the relevance, accuracy, and admissibility of those facts at trial.

I agree that whether or not judicial notice of the information contained in Exhibits 2-8 of Plaintiff's request is appropriate for trial purposes is a question better left for the post-summary judgment/pretrial stage of litigation.  Thus, except as otherwise specified above, Plaintiff's Request is denied without prejudice.  Plaintiff is free to renew her request at an appropriate time prior to trial.  In light of the large volume of information at issue, however, Plaintiff shall in any future motions, more specifically identify the particular facts she wants judicially noticed so that Defendant may raise appropriate objections, if any.

**E.  THE VOCATIONAL REPORT OF CASCADE DISABILITY MANAGEMENT, INC.**

Plaintiff filed Amended Objections to the Vocational Report of Cascade Disability Management, Inc., a report offered by Defendant as evidence that suitable equivalent work was available to Plaintiff from the summer of 2003 to the present

10

day. (Docket No. 56).[6] Plaintiff's objections are both technical (e.g., that the report was not made under oath and fails to comply with Fed. R. Civ. P. 26(a)(2)(B)), and substantive (e.g., that the methodology is unreliable and contains improper opinions and speculation). Plaintiff argues that because of these alleged defects, I should not consider the report for purposes of deciding Defendant's summary judgment motion. On April 11, 2005, Defendant filed a Motion for Leave to supply a verification from the author of the report to cure the alleged technical defects. (Docket No. 64).[7] On that same date, Defendant filed a brief arguing, inter alia, that Plaintiff's substantive arguments were without merit. (Docket No. 65).

Both Plaintiff's Objections and Defendant's Motion to Amend are denied as moot. Even if I were to grant Defendant's Motion to Amend and consider the vocational report as part of the summary judgment record, there would still exist issues of material fact as to whether Plaintiff failed to mitigate her damages (the only issue as to which the report is relevant). Because the report does not affect the outcome of the summary judgment motions, it is unnecessary for me to rule on the validity and/or admissibility of the report at this juncture. If Plaintiff also objects to the use of the report at trial, she may raise her objections again later through an appropriate pretrial motion.

---

[6] Although Plaintiff does not style her "Amended Objections" as a Motion, they are in the nature of a Motion to Strike, and I will regard them as such.

[7] A copy of the Report is attached as Exhibit F to the Appendix to Defendant's Response to Plaintiff's Responsive Concise Statement of Material Facts in Opposition to Defendant's Motion for Partial Summary Judgment. (Docket No. 47). The proposed Verification is attached as Exhibit A to Defendant's Motion to Amend. (Docket No. 64).

### III.  MOTION FOR SUMMARY JUDGMENT

### A.  FACTUAL BACKGROUND

Unless otherwise indicated, the following material facts are undisputed.

#### 1.  General Background

On September 17, 2001, Echostar hired Plaintiff as a full-time Customer Service Representative ("CSR") at its McKeesport, Pennsylvania call center.  Plaintiff's work schedule consisted of a four-day workweek of ten hours per shift for $9.00 per hour. Plaintiff worked more than 1,250 hours prior to August 5, 2002.

Beginning in approximately June 2002, Plaintiff's immediate supervisor was Richard Schanz ("Schanz").  Schanz reported to Operations Manager David Lippert ("Lippert"), who, in turn, reported to the General Manager, Shawn Anthony. Speaking on the telephone was an essential function of Plaintiff's job.

#### 2.  Plaintiff's Medical History

Plaintiff contends that in the summer of 2002, she began experiencing extreme fatigue, pain in her right rib area, and a loss of voice.  Plaintiff began treating with Umesh Golani, M.D. for her symptoms.  Plaintiff saw Dr. Golani on at least two occasions in August 2002 and had a chest X-ray on August 13, 2002. Plaintiff again saw Dr. Golani on September 4, 2002.  Dr. Golani's office notes for the September 4 visit state, inter alia, that Plaintiff "has recurrent laryngitis with hoarseness of voice."  (Docket No. 27, Ex. A, Ex. E to Pl.'s Dep.).  On September 18, 2002, Plaintiff complained to Dr. Golani of severe rib pain.  See id.  Dr. Golani advised Plaintiff to get a CT scan of her chest, which she did on September 24, 2002.  Plaintiff

contends that, on or about September 30, 2002, Dr. Golani's office informed her that the CT scan showed some evidence of "abnormalities" and that she needed to follow up with a mammogram.  By this time, according to Plaintiff, it was suspected that Plaintiff had cancer.

Plaintiff next saw Dr. Golani on October 8, 2002, at which time he indicated she would need a biopsy.  On October 10, 2002, Plaintiff had a mammogram and a biopsy. The medical tests confirmed that Plaintiff had breast cancer.  On October 18, 2002, Plaintiff began treating with Angela Keleher, M.D. for her breast cancer.  Dr. Keleher removed a 2 cm$^3$ infiltrating lobular carcinoma from Plaintiff's right breast via mastectomy on November 18, 2002.  Plaintiff was released from the hospital on November 19, 2002.

In or around February 2003, Plaintiff began radiation therapy but declined further radiation treatments because, according to Plaintiff, they made her "violently ill."  Plaintiff also underwent hormonal therapy with the drug Tamoxifin from approximately a week after surgery until August 2003.  In August 2003, Plaintiff began taking the drug Armidex in place of Tamoxifin.  Plaintiff never underwent chemotherapy.

### 3.  Plaintiff's Absences from Work and Termination from Employment

On August 5, 2002, Plaintiff began missing work purportedly due to her symptoms of extreme fatigue, voice loss, and right rib pain.  Plaintiff was absent from work from August 5 until August 25, 2002.  Plaintiff testified that she returned to work on August 25, 2002 because she felt that her voice had returned enough

13

that she could perform her job.  After approximately one hour, however, Plaintiff left work because she was unable to speak.  Plaintiff remained off work until Echostar decided to terminate her employment in October, 2002.

Echostar made the decision to terminate Plaintiff's employment at some point after October 2, 2002.  Schanz testified that he called Plaintiff on October 4, 2002 to inform her of the termination decision.  Plaintiff disputes receiving this phone call but admits  receiving a termination letter dated October 7, 2002.  Both the termination letter and the termination paperwork stated that Plaintiff was terminated for "health reasons."  Defendant informed Plaintiff that the effective date of her discharge was August 25, 2002, her last day worked.

The parties disagree as to the circumstances leading up to Plaintiff's discharge.  Plaintiff claims that beginning in or around mid-September 2002, she telephoned Human Resources Specialist Charlene Dolfi on more than one occasion to inquire about short-term disability and FMLA leave.  Plaintiff contends that Dolfi told her that: Defendant did not offer FMLA leave to its employees; all requests for disability leave "went through" Dolfi because Dolfi administered Defendant's disability leave plan; Plaintiff was ineligible for both 30 days of non-FMLA leave and for short-term disability leave because Plaintiff had not received a diagnosis of her medical condition; Plaintiff's best course of action was to resign her employment; and if Plaintiff did not resign, she likely would be fired.  Plaintiff also claims that Defendant terminated her employment only after she informed Schanz and/or Dolfi on or shortly after September 30, 2002, that her doctor suspected she had cancer.

14

Defendant, on the other hand, contends that it decided to terminate Plaintiff's employment only after Plaintiff continuously failed to provide medical documentation justifying her absences from work.[8]  Defendant claims that Schanz and/or the HR department repeatedly asked Plaintiff for such documentation throughout the period she was absent.  Defendant denies that Dolfi advised Plaintiff to resign or made any of the other alleged comments set forth above.

It is undisputed that Defendant never provided Plaintiff with a written notice under 29 C.F.R. § 825.301(b)(1) or (c); a Form WH-380 or WH-381 under 29 C.F.R. § 825.306; or a form with which to apply for FMLA leave.

### 4. Echostar Policies and Procedures

The Echostar Employee Handbook contains sections addressing both Family and Medical Leave and Personal Leaves of Absence.  See Pl.'s Dep. Ex. L (Docket No. 27, Ex. A).  Consistent with the FMLA, the Family and Medical Leave section provides, inter alia, that "[e]mployees who have worked for Echostar for at least 12 months and a minimum of 1,250 hours during the prior 12 months may qualify for family and medical leave."  Id. at 40.  The section further provides, inter alia, that:

> Family and medical leaves of absence requests must be
> submitted in writing at least 30 days before the leave is
> proposed to begin or as soon as practicable when the

---

[8]  Dr. Golani provided Plaintiff with a slip dated August 13, 2002, excusing Plaintiff from work between August 9 and August 16, 2002.  The slip indicated that Plaintiff was "fit to resume on 8/17/02."  (Docket No. 27, Ex. A, Ex. D to Pl.'s Dep.).  Plaintiff gave this slip to Schanz when she returned to work on August 25, 2002.  Plaintiff also contends that Dr. Golani provided a second slip excusing her from work between August 30, 2002 and September 11, 2002.  Although Plaintiff claims that her then-roommate, Janice Bell, delivered this second slip to Schanz, Schanz and Echostar deny ever receiving it.  Neither party has produced a copy of the alleged second slip.  Plaintiff does not contend that she obtained or submitted any other doctor's slips excusing her from work.

> need for leave is unforeseeable.  Appropriate forms must be submitted to the Human Resources Department to initiate family or medical leave and to return the employee to active status when the leave ends. Employees must provide the Company with the appropriate certification for medical conditions.   If notifications and appropriate certification are not provided in a timely basis, approval for leave may be delayed.

Id.  The Handbook also states that "[a] doctor's release is required if returning to work from a medical leave of one week or longer."  Id. at 41.

As set forth in the Handbook, "[r]egular full-time employees who have completed 90 days of employment and who are not eligible for an FMLA leave may request an unpaid Personal Leave of Absence."  Id.  The Handbook provides that "[t]his type of leave is granted at the sole discretion of the Company and will be a leave of absence without pay or employment benefits for a period not to exceed 30 days."  Id.  With respect to notification, the Handbook states:

> For purposes other than an emergency, request for leave should be submitted in writing to the supervisor or manager as far in advance of the anticipated leave date as possible.  The leave request must be dated, signed by the employee and state the reasons, circumstances, duration and location of the employee during the leave.   The supervisor or manager will submit his or her recommendations to the department vice president and to Human Resources, who will approve or disapprove the leave.  Before approving or denying a leave request, the department's operating need and the staff member's needs, job performance and length of service will be considered.

Id.  The "Personal Leave of Absence" section does not mention anything about

medical certifications or doctor's notes.

The Handbook also notes that Echostar "will not tolerate" certain behaviors, including "excessive absenteeism." Id. at 23.

Page one of the Handbook informs employees that "[t]he guidelines in this Handbook are subject to change at any time, with or without notice, at the sole discretion of the Company." Id. at 1. Plaintiff received a copy of the Handbook when her employment commenced, and signed an acknowledgment form indicating that she had read the Handbook carefully. Pl.'s Dep., Ex. K (Docket No. 27, Ex. A). By signing the form, Plaintiff also acknowledged her understanding that the Handbook was "for general information only" and represented "brief summaries of Company guidelines which are subject to change or discontinuance at any time without prior notice." Id.

## B. **LEGAL ANALYSIS**

### 1. **Standard of Review**

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

17

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact.  <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987).   The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  <u>Id</u>.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322.   Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  <u>Id</u>. at 324.  Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>White v. Westinghouse Elec. Co.</u>, 862 F.2d 56, 59 (3d Cir. 1988) (quoting <u>Celotex</u>, 477 U.S. at 322).

   **2.  <u>Disability Discrimination Under the ADA and PHRA (Counts I and II)</u>**

The ADA prohibits a covered employer from discriminating against a qualified

individual with a disability because of that disability in regard to the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).[9] In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must prove that: (1) she has a "disability" within the meaning of the Act; (2) she is a "otherwise qualified" to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that she has suffered an adverse employment action. Williams, 380 F.3d at 761. Defendants argue that Plaintiff cannot satisfy the first or second elements of the *prima facie* case.

### a. Definition of Disability

Under the ADA, an "individual with a disability" is any person who:

> (i) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (ii) has a record of such an impairment; or
>
> (iii) is regarded as having such an impairment.

42 U.S.C. § 12102(2). Here, Plaintiff argues that she is disabled within the meaning of both the first and third subsections of this definition. I will address each of these arguments in turn.

### (1) Actual Disability

In order to qualify as disabled under the first subsection of the definition of

---

[9] My analysis of Plaintiff's ADA claim applies equally to Plaintiff's disability discrimination claim under the PHRA. Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 761 n.6 (3d Cir. 2004), cert. denied, 125 S. Ct. 1725 (2005).

disability, a plaintiff must initially prove that he or she has a physical or mental impairment. <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 194 (2002). Merely having an impairment, however, does not make one disabled for purposes of the law. <u>Id</u>.; 29 C.F.R. § 1630, App. (1996). Rather, plaintiffs "also need to demonstrate that the impairment limits a major life activity." <u>Toyota Motor Mfg.</u>, 534 U.S. at 195. The regulations promulgated pursuant to the ADA provide a list of examples of "major life activities," including:  caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.   29 C.F.R. § 1630.2(i) (2000). To prove disability, a plaintiff "must further show that the limitation on the major life activity is 'substantial[l].'" <u>Toyota Motor Mfg.</u>, 534 U.S. at 195 (citing 42 U.S.C. § 12102(2)(A)).

The term "substantial" in the phrase "substantially limits" "clearly precludes impairments that interfere in only a minor way with performance of [a major life activity] from qualifying as disabilities." <u>Id</u>. at 197; <u>see also</u> <u>Albertson's, Inc. v. Kirkingburg</u>, 527 U.S. 555, 565 (1999) (a "mere difference" does not amount to a "significant restric[tion]" on a major life activity).  Further, the phrase "major life activity" refers only "to those activities that are of central importance to daily life." <u>Toyota Motor Mfg.</u>, 534 U.S. at 197.   As the Supreme Court has cautioned, congressional intent dictates that "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." <u>Id</u>.  Therefore, to be substantially limited in a major life activity:

> an individual must have an impairment that prevents or
> severely restricts the individual from doing activities that

> are of central importance to most people's daily lives. The
> impairment's impact must also be permanent or long-
> term.

Id. at 198 (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii)).

The "essence" of the "substantial limitation" inquiry "regards comparing the conditions, manner, or duration under which the average person in the general population can perform the major life activity at issue with those under which an impaired plaintiff must perform." Emory v. AstraZeneca Pharms. LP, 401 F.3d 174, 179-80 (3d Cir. 2005); see also 29 C.F.R. § 1630.2(j)(1).  In making this determination, courts should consider the nature and severity, the duration or expected duration, and the long-term impact or expected long-term impact of the impairment. Emory, 401 F.3d at 180 (citing 29 C.F.R. § 1630.2(j)(2)).

Courts must determine whether an individual has a disability on a case-by-case basis.  See Toyota Motor Mfg., 534 U.S. at 198.  Thus:

> [i]t is insufficient for individuals attempting to prove
> disability status under this test to merely submit evidence
> of a medical diagnosis of an impairment.   Instead,
> [plaintiffs must] "prove a disability by offering evidence
> that the extent of the limitation [caused by their
> impairment] in terms of their own experience . . . is
> substantial."

Toyota Motor Mfg., 534 U.S. at 198 (quoting Albertson's, Inc., 527 U.S. at 567) (third and fourth alterations in original); see also Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 n.5 (3d Cir. 2001) (medical diagnoses standing alone, "no matter how severe (or severe-sounding to the layperson)" are insufficient to establish an ADA disability).

**(a) Major Life Activity**

Here, the parties do not dispute that Plaintiff suffered from breast cancer, a condition that Defendant concedes is a physical impairment within the meaning of the Act.  Thus, I will turn to whether or not Plaintiff's cancer limited a major life activity.  This step of the analysis requires first that I identify the life activity upon which the plaintiff relies and second that I determine whether or not it constitutes a major life activity under the ADA.  Bragdon v. Abbott, 524 U.S. 624, 631 (1998).

In her Opposition Brief, Plaintiff claims that her cancer (including the side effects thereof and the required treatments therefor) limited two "life activities" – speaking and "maintaining normally life-cycling cells."  See Pl.'s Opp. Br. at 14.[10] Defendant concedes that speaking is a major life activity under the Act, but disputes that the definition of "major life activity" includes "the normal life-cycling of cells." I agree with Defendant that "the normal life-cycling of cells" is not a major life activity within the meaning of the ADA.

As an initial matter, Plaintiff has not cited any legal authority (and independent research has revealed none) even remotely indicating that the "normal life-cycling of cells" is a major life activity as contemplated by the ADA.  Instead, Plaintiff relies solely on the decision of the Court of Appeals for the Third Circuit in Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378 (3d Cir. 2004) in support of her argument. This reliance, however, is misplaced.  In Fiscus, an employee with end-stage renal

---

[10]  In her answers to Interrogatories, Plaintiff also alleged that she was substantially limited in "performing the daily activities of life and 'remaining free of terminal illness.'" (Docket No. 32, Ex. 4).  Plaintiff, however, does not mention these activities in her Brief.

disease brought an ADA claim against her former employer after the employer discharged her when her leave expired before she had recuperated from a kidney transplant.  Id. at 380.  Fiscus had alleged that she was disabled under the ADA because her renal disease substantially limited her ability to cleanse her blood and process waste.  The district court disagreed, holding that the plaintiff's allegations were just another way of saying that she was substantially limited in the major life activity of "kidney function" and that "kidney function" was not a major life activity within the meaning of the Act.  Id.

The court of appeals reversed, holding that the district court erred by conflating the employee's impairment (absence of kidney function) with the consequences of that impairment (inability to cleanse and eliminate waste from the blood).  Id. at 382.  The court of appeals went on to conclude that the "elimination of waste from blood" was a major life activity under the ADA.  Id. at 385.  In so deciding, the court of appeals stated that "[a] major life activity need not constitute volitional or public behavior; it need not be an activity that is performed regularly or frequently; but it does have to have importance to human life comparable to that of activities listed in [the Regulations]."  Id. at 384.  The court further noted that "waste elimination" was "comparable to other life-sustaining activities such as breathing, eating, or drinking, all of which have been held to be major life activities within the statute."  Id.

In an attempt to analogize Plaintiff's case to that of the plaintiff in Fiscus, Plaintiff's counsel argues that:

> Just as Ms. Fiscus did not allege that "kidney function" was
> her ADA major life activity, Ms. McCurdy does not allege
> that "breast function" is her major life activity.  Rather, Ms.
> McCurdy's major life activity is the life cycling of her
> body's cells, an activity that is manifestly "central to the
> life process," and that causes death if it breaks down.

Pl.'s Opp. at 17.  While I commend Plaintiff's counsel for his creativity, this analogy

misses the mark.  As Plaintiff herself has proposed, cancer, regardless of where it

occurs in the body,  is, by definition, "a disease caused by an uncontrolled division

of abnormal cells."  Pl.'s Req. for Mandatory Judicial Notice, Docket No. 51 (quoting

Compact Oxford Dictionary of Current English).  Thus, although Plaintiff does not

argue that "breast function" is a major life activity, she is in essence asking me to

classify "cellular function" as one.[11]  In other words, unlike in Fiscus, the abnormal life-

cycling of Plaintiff's cells is the impairment itself (i.e., her cancer) and not a life

activity limited by that impairment.  Although Fiscus arguably broadened the

concept of a major life activity under the ADA, nothing in Fiscus suggests that the

court of appeals intended to stretch the definition this far.

Even if the "normal life-cycling of cells" were a major life activity within the

meaning of the ADA (which it is not), Plaintiff has not pointed to any evidence

whatsoever that she was substantially limited in that activity.  The mere fact that

cancer in general impacts the "normal life-cycling of one's cells," even if true, is

insufficient to satisfy Plaintiff's burden in this regard.  To hold otherwise would be

---

[11]  Plaintiff even refers to the life activity at issue as "cellular function" in the introduction to
her brief.  Pl.'s Opp. at 1.

effectively to transform cancer into a *per se* disability, which clearly it is not.  See, e.g., Hirsch v. Nat'l Mall & Serv., Inc., 989 F. Supp. 977, 981-82 (N.D. Ill. 1997); Godron v. Hillsborough County, No. CIV 97-CV-592-B, 2000 WL 1459054, at *2 n.3 (D.N.H. Mar. 21, 2000).[12]  If anything, the evidence in this case shows that Plaintiff's surgery and drug treatments were successful and that Plaintiff's cancer has not recurred.  Thus, Plaintiff's claim that she was actually disabled fails for these reasons as well.

**(b)  Substantial Limitation - Speaking**

Because the "normal life-cycling of cells" is not a major life activity within the meaning of the Act, Plaintiff can only establish an "actual disability" under the ADA if she can show that her impairment substantially limited her ability to speak.  This Plaintiff cannot do.

After careful review of the record evidence and pertinent case law, I find that, even if accurate, Plaintiff's impairments did not substantially limit her ability to speak as compared to an average member of the general population.  Significantly, Plaintiff admitted in her deposition that her voice loss, which began in early-August 2002, was never a problem again after her surgery in mid-November 2002:

> Q.  Then after the surgery, was the laryngitis ever an issue again?
>
> A.  No.

---

[12]  As set forth above, I recognize that Plaintiff has asked me to judicially notice a number of facts with respect to the general effect of cancer on the life process of cells.  (Docket No. 51).  Even if I accept these facts as true, however, they fail to support Plaintiff's claim because they do not address the impact of Plaintiff's cancer on Plaintiff or on the life-cycling of Plaintiff's cells.

(Docket No. 27, Ex. A at 64).[13]  Thus, Plaintiff's voice loss, even if complete, was merely temporary and does not does not rise to the level of a substantially limiting impairment within the meaning of the ADA.   See 29 C.F.R. pt. 1630, app. ("[T]emporary non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities."); see also McDonald v. Commonwealth of Pa., 62 F.3d 92, 95-96 (3d Cir. 1995) (plaintiff's inability to work for less than two months after knee surgery "was not permanent nor for such an extended time as to be of the type contemplated by the [ADA]").

The court's decision in Williams v. Philadelphia Housing Authority, 380 F.3d 751 (3d Cir. 2004), cited by Plaintiff in her opposition brief, does not change this result. Williams simply acknowledges that "an impairment and its impact may be less than permanent and still significantly restrict a person's ability to [engage in a major life activity]." Pl.'s Opp. at 18 (quoting Williams, 380 F.3d at 765).  It does not stand for the proposition that a temporary, non-chronic impairment of brief duration, such as Plaintiff's three and a half month speech loss, is substantially limiting under the ADA. To the contrary, unlike here, the evidence in Williams indicated that the plaintiff's impairment (depression) lasted for over two years and was both severe and recurrent.  See Williams, 380 F.3d at 765-66.

In short, the record evidence, including Plaintiff's own testimony, is insufficient to create a genuine issue of fact as to whether her cancer (including the

---

[13]  Plaintiff also testified that her fatigue and pain under her arm were no longer an issue after her surgery.  (Docket No. 27, Ex. A. at 65-66).

side effects thereof and the required treatments therefor) substantially limited any major life activities.  Therefore, Plaintiff's cancer was not an actual disability under the ADA.[14]

### (2) "Regarded As" Disabled

The fact that Plaintiff is not "actually disabled" within the meaning of the ADA does not end the disability inquiry.  Rather, Plaintiff still may qualify as "disabled" under the Act if her employer regarded her as having a disability.  Here, Plaintiff argues that, even if she is not disabled, there is a genuine issue of material fact as to whether Defendant unlawfully regarded her as such.

To prevail under a "regarded as" theory, Plaintiff must demonstrate either that (1) despite having no impairment at all, her employer erroneously believes she has an impairment that substantially limits a major life activity or (2) she has a nonlimiting impairment that the employer mistakenly believes substantially limits a major life activity.  Tice, 247 F.3d at 514.  In either case, it is not sufficient to show that Defendant regarded Plaintiff as having an impairment; rather, Defendant must have regarded Plaintiff as having a substantially limiting impairment.  See Deane v. Pocono Med. Ctr., 142 F.3d 138, 143 (3d Cir. 1998); Tice, 247 F.3d at 514.  In all cases, the court should consider the information the employer had regarding the

---

[14]  This finding is consistent with the findings of numerous other courts that cancer patients with similar, and sometimes even more restrictive, limitations as Plaintiff were not disabled within the meaning of the ADA.  See, e.g., Ellison v. Software Spectrum, Inc., 85 F.3d 187, 190-91 (5th Cir. 1996); Treiber v. Lindbergh Sch. Dist., 199 F. Supp. 2d 949, 960-61 (E.D. Mo. 2002); Alderdice v. Am. Health Holding, Inc., 118 F. Supp. 2d 856, 863-64 (S.D. Ohio 2000), aff'd, 37 Fed. Appx. 185 (6th Cir. 2002); Schwertfager v. City of Boynton Beach, 42 F. Supp. 2d 1347, 1359-60 (S.D. Fla. 1999); Madjlessi v. Macy's West, Inc., 993 F. Supp. 736, 740-41 (N.D. Cal. 1997).

plaintiff's condition and the employer's response to that information.

Here, Plaintiff contends that Defendant impermissibly regarded her as substantially limited in the major life activity of working.[15]  Pl.'s Opp. Br. at 18. Generally, "an employer's perception that an employee cannot perform a wide range of jobs suffices to make out a 'regarded as' claim."  Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 188 (3d Cir. 1999).  I agree that the record evidence demonstrates that there is a genuine issue of material fact on this question.

For example, Plaintiff testified that when she asked Charlene Dolfi about STD benefits and FMLA leave, Dolfi told Plaintiff instead to resign her employment, recuperate, and then re-apply for her job.  In addition, HR Manager Jill Harmon admits changing the termination code on Plaintiff's termination paperwork from "JOB" (job abandonment) to "HEA" (health reasons).  When asked about this change during her deposition, Harmon testified:

> Job abandonment is an employee that walks away and never contacts you again and, you know, deliberately walks off the job and – with total disregard, and I did not think that was appropriate to the circumstances, and I didn't like health reasons, either, because we really didn't have anything documented, but it was the closest thing I could come to the situation we were facing with Janie.

(Harmon Dep. at 65, Docket No. 47, Ex. C).  The termination letter Echostar sent to

---

[15]  Plaintiff also argues that the fact Schanz sent her home from work on August 25, 2002, demonstrates that Echostar perceived her as substantially limited in the major life activity of speaking.  Pl.'s Br. at 18.  I disagree.  At most, this fact shows that Schanz regarded Plaintiff as unable to speak on that one date.  There is no evidence that Schanz regarded Plaintiff as substantially unable to speak either after that date or for more than a brief period of time or that anyone else at Echostar regarded her as such.  Thus, I analyze Plaintiff's "regarded as" claim with respect to the activity of working only.

Plaintiff also listed the reason for termination as "health reasons."  Further, Operations Manager David Lippert, whom Defendant admits was involved in the decision to terminate Plaintiff's employment, testified that, if he were to evaluate whether or not to rehire Plaintiff at the present time, he would, among other things, "indicate to her that she has been – you know, when she left she was not medically able to work, I would ask if she's medically able to work now.  I would ask that she bring in a work – something just stating that she's medically able to work." (Lippert Dep. at 91-92, Docket No. 32, Ex. 8).  I also find it noteworthy that, although Plaintiff missed well over thirty days of work prior to her CT scan, Echostar did not terminate her employment until just after Plaintiff contends she communicated the results of that scan to Schanz and HR.[16]

In its Reply Brief, Defendant argues, in part, that it could not have regarded Plaintiff as disabled because it offered Plaintiff (in May 2004) unconditional reinstatement to her position.  This argument is without merit.  The fact that Echostar made Plaintiff an unconditional offer of reinstatement over four months after the commencement of this lawsuit bears no relation to whether or not anyone at Echostar regarded Plaintiff as disabled at the time it terminated her employment

---

[16]  I recognize that Defendant terminated Plaintiff's employment prior to the date she definitively was diagnosed with cancer.  Plaintiff and her doctors, however, certainly suspected that Plaintiff had cancer prior to that date, and there is evidence of record that Plaintiff communicated this likelihood to Echostar.  See, e.g., Pl. Dep. at 108-09 (Docket No. 32, Ex. 1).  Indeed, Plaintiff's supervisor, Rick Schanz, admits that Plaintiff told him that her doctor suspected cancer.  Schanz Dep. at 43-44 (Docket No. 32, Ex. 10).  Plaintiff also testified that she told Charlene Dolfi shortly before her discharge that her CT scan had revealed abnormalities.  Pl. Dep. at 107-08.  Thus, there is sufficient record evidence for a jury to conclude that Echostar perceived Plaintiff as having cancer.  Even if the decisionmakers did not know, or suspect, that Plaintiff had cancer, there is ample evidence of record (as set forth in the text above) that they perceived her health condition, whatever the diagnosis, as substantially limiting her ability to work.

over a year-and-a-half earlier in October 2002.

In sum, based on the above examples and other evidence of record, I find that there are genuine issues of material fact as to whether Echostar perceived Plaintiff as unable to work because of her cancer and/or the symptoms thereof.

### b. **Qualified Individual**

In order to satisfy the second prong of the *prima facie* case, a plaintiff must prove that she is a "qualified individual." Buskirk v. Apollo Metals, 307 F.3d 160, 168 (3d Cir. 2002). Defendant argues that, even if Plaintiff is disabled under the ADA, her disability discrimination claims fail as a matter of law because she is not such a "qualified individual" within the meaning of the Act. I disagree.

The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see also Buskirk, 307 F.3d at 168. Here, the parties do not dispute that Plaintiff had the requisite skill, experience, education, and other job-related requirements of her CSR position. See 29 C.F.R. § 1630.2(m). The parties also appear to agree, at least for purposes of summary judgment, that Plaintiff could not perform her job at the time of her discharge without some type of accommodation. Plaintiff argues, however, that she could have performed her job with reasonable accommodation, namely, "a reasonable period of unpaid leave." Pl.'s Opp. at 19. As numerous courts have recognized, a leave of absence for medical treatment may constitute a reasonable accommodation under the ADA. See Wilson v. Lemington Home for the Aged, 159

30

F. Supp. 2d 186, 201 (W.D. Pa. 2001) (citing cases); see also 29 C.F.R. pt. 1630, App. ("[O]ther accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment . . . .").[17]

Upon review of the record, I find that whether Plaintiff would have been able to perform the essential functions of her job after a "reasonable period" of unpaid leave and whether such an accommodation itself would be have been a "reasonable accommodation" under the facts and circumstances of this case, are material issues of fact for the jury to decide.  Thus, I cannot rule as a matter of law that Plaintiff was not otherwise qualified to perform her job within the meaning of the ADA.

### 3.  <u>Violation of FMLA (Count III)</u>

Congress enacted the FMLA "to balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons."   29 U.S.C. § 2601(b)(1), (2).   The FMLA seeks to achieve these purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3).

An employee is eligible for FMLA leave if she (1) has been employed by the employer for at least one year and (2) has worked at least 1,250 hours in the twelve months immediately preceding the leave.  29 U.S.C.A. § 2611(2).  Eligible employees may take up to twelve work weeks of leave within a twelve-month period if, inter alia, the employee suffers from "a serious health condition that makes the employee

---

[17]  The fact that Plaintiff was, at most, "regarded as" disabled does not preclude this analysis. In this Circuit, "regarded as" plaintiffs also have a right to a reasonable accommodation.  <u>Williams</u>, 380 F.3d at 772-76.

unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Following a qualified FMLA leave, an employee has the statutory right to be restored to his or her former position or an equivalent position.  29 U.S.C. §§ 2612, 2614; 29 C.F.R. § 825.214(a).  An employer need not restore the employment if the employee "is unable to perform an essential function of the position because of a physical or mental condition."  29 C.F.R. § 825.214(b). Moreover, a restored employee is not entitled to any rights, benefits, or positions to which the employee would not "have been entitled had the employee not taken the leave."  29 U.S.C. § 2614(a)(3)(B).  Thus, "if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 141 (3d Cir. 2004).

Section 2615(a)(1) of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights.  29 U.S.C. § 2615(a)(1).  The United States Department of Labor ("DOL") regulations implementing the FMLA explain that " '[i]nterfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.  It would also include manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b).  The regulations further provide that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies."  29 C.F.R. § 825.220(c).

In Count III of her Amended Complaint, Plaintiff argues that Defendant interfered with her attempts to exercise her rights under the FMLA by failing to properly notify her of those rights and by falsely telling her she was not entitled to FMLA leave. Plaintiff contends that had Defendant properly advised her of her FMLA rights and obligations, she would have been able both to exercise her rights and to structure her leave in a way that preserved her job. See Am. Compl. ¶¶ 26-31; Pl.'s Br. at 4-9. Plaintiff further argues that Defendant interfered with her FMLA rights by "backdating" her discharge and, thus, manipulating the circumstances to prevent the FMLA from coming into play. Pl.'s Br. at 9-13. She also argues that Defendant counted Plaintiff's medical leave from September 17, 2002 (her one-year anniversary date) through October 4, 2002 as a negative factor in terminating her employment. Id. at 13-17. Both parties have moved for summary judgment as to Plaintiff's FMLA claims. For the reasons set forth below, both motions are denied.

### a. **Defendant's Motion for Partial Summary Judgment**

Defendant first argues that it is entitled to summary judgment on Plaintiff's FMLA claim because Plaintiff was terminated effective August 25, 2002 because she never provided medical documentation to justify her absences prior to September 17, 2002. Def.'s Br. at 11-14. As such, Defendant argues, Plaintiff was properly discharged for unexcused absences that occurred before she became FMLA-eligible. Although Defendant has raised relevant concerns regarding Plaintiff's pre-September 17 absences, there remain genuine questions of material fact as to issues such as whether or not Echostar truly considered these absences unexcused and

whether or not it terminated Plaintiff's employment due to these absences.  There also is an issue of fact as to whether, by "backdating" Plaintiff's termination date to August 25, 2002 (prior to her one-year anniversary date), Echostar unlawfully manipulated the circumstances to avoid responsibilities under the FMLA. Accordingly, I am unable to grant summary judgment on this issue.

Second, Defendant argues that even if Plaintiff had properly preserved her employment prior to September 17, 2002, she was not entitled to FMLA leave as of that date because no medical provider restricted her from working after that date. Def.'s Br. at 11, 14-15. While the lack of medical documentation may hurt Plaintiff's chances with the jury, I cannot rule that Defendant is entitled to prevail as a matter of law on this issue.  To the contrary, viewing the evidence in the light most favorable to Plaintiff, a reasonable fact-finder could conclude that Plaintiff's cancer, though yet undiagnosed, was a serious health condition that prevented her, *inter alia*, from speaking or otherwise from performing an essential function of her job as a CSR for more than three consecutive calendar days, thus entitling her to FMLA leave.  See 29 C.F.R. § 825.114(a)(2).

Finally, Defendant argues that even if Plaintiff could establish a "technical" breach of the FMLA, Echostar is still entitled to summary judgment because Plaintiff did not suffer any damages as a result of the alleged violations.  Def.'s Br. at 15-17. Specifically, Defendant argues that Plaintiff would not have been able to return to work after her leave expired on December 10, 2002 and that she did not suffer any FMLA damages in the interim.  When viewed in the light most favorable to Plaintiff,

however, the record evidence, including Plaintiff's declaration that she could have structured her leave on a reduced or intermittent basis had Echostar properly notified her of her rights, precludes me from entering summary judgment on this question.

**b.  Plaintiff's Motion for Partial Summary Judgment**

**(1)  Failure to Advise**

Plaintiff argues that she is entitled to summary judgment because Defendant failed to properly advise her of her FMLA rights and she was prejudiced thereby. The DOL regulations require employers to provide employees with individualized notice of their FMLA rights and obligations.  Fogelman v. Greater Hazleton Health Alliance, 122 Fed. Appx. 581, 587 (3d Cir. 2004).  Among other things, the regulations mandate that each time an employee requests leave, the employer, within a reasonable time thereafter, "provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations."  29 C.F.R. § 825.301(b)(1), (c).

Defendant concedes that it did not provide Plaintiff with the specific written notice mandated by section 825.301(b)(1), and (c).  Defendant argues, however, that it, and not Plaintiff, is entitled to summary judgment because the regulation is invalid and Plaintiff's interference claim otherwise fails as a matter of law.  Although I agree with Defendant that its failure to notify does not per se establish an actionable violation of the FMLA, I disagree that either party is entitled to summary judgment on this issue.

The Court of Appeals for the Third Circuit directly addressed a similar issue in Conoshenti, 364 F.3d 135 (3d Cir. 2004). In Conoshenti, the employer failed to advise the plaintiff of his right to twelve weeks of FMLA leave after the plaintiff properly gave notice of his serious health condition. Id. at 142-43. Reversing the entry of summary judgment in favor of the employer, the Court of Appeals held that Conoshenti could "show an interference with his right to leave under the FMLA . . . if he was able to establish that this failure to advise rendered him unable to exercise that right in a meaningful way." Id. at 143. In other words, a plaintiff can establish "an actionable 'interference' in violation of 2615(a)" based on the failure to comply with the FMLA's notice regulations if the plaintiff "is able to show prejudice as a result of that violation." Id. at 144; see also Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89-90 (2002) (suggesting the same).[18]

Thus, the question before me is whether Plaintiff was prejudiced by Defendant's failure to provide her individualized notice of her FMLA rights and obligations. After reviewing both parties' arguments, I find that the evidence of record, when viewed in the light most favorable to the nonmoving party (be it Plaintiff or Defendant), creates genuine issues of material fact that preclude summary judgment.

For example, in her declaration, Plaintiff insists, among other things, that had Echostar provided the requisite notice, she would have been able to structure her

---

[18] Although the parties in Conoshenti did not challenge the validity of the notice regulations, the Court of Appeals cited those regulations with approval and found them to be reasonable. 364 F.3d at 144. I find no reason to disagree with the Court of Appeals' analysis in this case.

medical leave to avoid disciplinary action and to preserve her job.  Among other things, Plaintiff declares that she would have specifically exercised her rights to intermittent and reduced leave to accommodate her continuing medical examinations and treatments.  She also states that her laryngitis and other symptoms subsided after her November 18 surgery – less than 12 weeks after her FMLA leave would have commenced, further supporting her assertion that she could have returned to work within 12 weeks after commencing her leave and/or structured her leave on a reduced or intermittent basis to preserve her employment.  While I disagree with Plaintiff that this evidence warrants summary judgment in her favor, it at least creates a material issue of fact for the jury.  See Reid-Falcone, 2005 WL 1527792, at *6.

Defendant argues that Plaintiff could not have been prejudiced because she, unlike the employee in Conoshenti, was advised of her FMLA rights in the Echostar employee handbook and never alleged that Echostar failed to post the FMLA notice required by 29 U.S.C. § 2619. I disagree.  As an initial matter, Echostar's FMLA postings are not part of the summary judgment record before me.  Thus, I have not considered them.  In addition, although the Echostar handbook contains a description of the FMLA and Echostar's FMLA policy generally, the handbook obviously does not speak to the facts and circumstances of Plaintiff's individual case.  Thus, the Handbook does not per se cure Defendant's failure to provide the required individualized notice.  In addition, the Handbook informs employees that "[t]he guidelines in this Handbook are subject to change at any time, with or without

notice, at the sole discretion of the Company." The acknowledgment form Plaintiff signed at the commencement of her employment similarly explained that the Handbook was "for general information only" and represented "brief summaries of Company guidelines which are subject to change or discontinuance at any time without prior notice." Thus, a jury could conclude that Plaintiff reasonably relied on Dolfi's alleged representations regarding Plaintiff's FMLA rights (or lack thereof) despite the arguably contrary provisions in the Handbook.[19]

### (2) FMLA Retaliation

Plaintiff also argues that she is entitled to summary judgment in her favor because Defendant used her FMLA leave (i.e., her absences between September 17, and October 4, 2002) as a "negative factor" in its decision to terminate her employment. Pl.'s Br. at 15-17.

The parties agree that in order to establish a *prima facie* case for retaliatory discharge under the FMLA, Plaintiff must establish that (1) she took FMLA leave; (2) she suffered an adverse employment action; and (3) a causal connection between the two. Conoshenti, 364 F.3d at 147.

As an initial matter, Defendant argues that I should not even consider Plaintiff's retaliation claim because she did not plead it in her Amended Complaint

---

[19] Defendant erroneously cites to page 144 of the Conoshenti opinion as indicating that the Conoshenti plaintiff alleged that his employer failed to post an FMLA notice and never provided any other materials regarding FMLA leave. Def.'s Opp. at 7. The cited statements actually pertain to the plaintiff in Nusbaum v. CB Richard Ellis, Inc., 171 F. Supp. 2d 377, 379-80 (D.N.J. 2001), a pre-Conoshenti case discussed by the Court of Appeals in its opinion. Conoshenti, 364 F.3d at 144. The Conoshenti opinion does not discuss the posting or handbook issues with respect to Conoshenti himself.

or interrogatory responses. In her Reply Brief, Plaintiff appears to acknowledge that she did not raise this claim in her Amended Complaint.  Pl.'s Reply at 4.  She argues, however, that I nevertheless should consider her argument because claims raised at the summary judgment stage are deemed motions to amend the complaint which should be freely granted under Fed. R. Civ. P. 15.  Pl.'s Reply at 4 (citing Bradley v. Kemper Ins. Co., 121 Fed. Appx. 468, 471 (3d Cir. 2005) and Sola v. Lafayette Coll., 804 F.2d 40, 45 (3d Cir. 1986)).  Consistent with the court of appeals in Bradley and Sola, I deem Plaintiff's Complaint amended to add an FMLA retaliation claim.  In so doing, I noted that both parties fully briefed this issue on the merits and that Defendant does not claim to have been prejudiced by Plaintiff's failure to include this theory in her Amended Complaint at the outset.

Although Plaintiff may proceed with her FMLA retaliation theory, she is not entitled to summary judgment on her claim. Whether or not Plaintiff can show that she "used" FMLA leave and/or that her discharge was causally related to that leave, are issues of fact for the jury to decide at trial.

### 4.  Failure to Mitigate

Defendant argues that even if Plaintiff's claims survive summary judgment, Defendant is entitled to a limitation on Plaintiff's damage claim because Plaintiff failed to mitigate her damages by exercising reasonable diligence to seek and accept substantially equivalent employment after her employment with Echostar ended.  Def.'s Br. at 18-20; see Booker v. Taylor Milk Co., 64 F.3d 860, 864-66 (3d Cir. 1995).  Defendant's argument, however, relies on factual comparisons between

Plaintiff's CSR position and other positions that Plaintiff may have sought and/or taken.  There is also a factual issue as to whether or not Plaintiff's decision not to seek any alternative employment until the summer of 2003 was reasonable.  I am unwilling to make such factual determinations at the summary judgment stage.  Accordingly, Defendant's Motion for Summary Judgment is denied on this issue.

## IV.  CONCLUSION

For all of these reasons, Defendant's Motion for Partial Summary Judgment is granted in part and denied in part, and Plaintiff's Motion for Partial Summary Judgment is denied.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANIE L. MCCURDY, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | )   Civil Action No.  04-86 |
| | ) |
| ECHOSTAR COMMUNICATIONS CORPORATION | ) |
| a/k/a ECHOSTAR SATELLITE CORPORATION a/k/a | ) |
| ECHOSPHERE CORPORATION, | ) |
| | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **11th** day of August, 2005, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 23) is DENIED.

It is further ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 25) is GRANTED with respect to Plaintiff's claim that she had an "actual disability" within the meaning of the Americans with Disabilities Act and/or Pennsylvania Human Relations Act.   Defendant's Motion is DENIED in all other

respects.

It is further ORDERED as follows:

Defendant's Motion to Strike (Docket No. 33) is GRANTED with respect to the last sentence of paragraph 12 of the Declaration of Janie L. McCurdy in Support of Plaintiff's Motion for Partial Summary Judgment (Docket No. 22, Ex. 32), which sentence is hereby stricken from the record.  Defendant's Motion to Strike is DENIED in all other respects;

Defendant's Second Motion to Strike (Docket No. 43) is DENIED;

Plaintiff's Motion to Strike Portions of the Verifications of Charlene Dolfi and Richard Schanz and Portions of Defendant's Response to Plaintiff's Statement of Material Facts, Appendix and Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment (Docket No. 38) is DENIED;

Plaintiff's Request for Mandatory Judicial Notice Under Fed. R. Evid. 201(d) (Docket No. 51) is GRANTED in part and DENIED in part as described more fully in the Opinion accompanying this Order;

Plaintiff's Amended Objections to the Vocational Report of Cascade Disability Management, Inc.  (Docket No. 56) are DENIED as moot; and

Defendant's Motion for Leave to Amend Exhibit F of Its Appendix to Defendant's Response to Plaintiff's Responsive Concise Statement of Material Facts in Opposition to Defendant's Motion for Partial Summary Judgment (Docket No. 64) is DENIED as moot.

A final Pretrial Conference is scheduled for Tuesday, August 23, 2005 at 12:00

P.M., before the undersigned on the Third Floor, Suite 307 of the U.S. Post Office &

Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania.   Counsel shall have

settlement authority and parties shall be either present or available by telephone.


BY THE COURT:



/S/Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge