IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANIE L. MCCURDY,                  )
                                  )
          Plaintiff,        )
                                  )
  -vs-                      )
                                  )   Civil Action No.  04-86
                                  )
ECHOSTAR COMMUNICATIONS CORPORATION,  )
a/k/a ECHOSTAR SATELLITE CORPORATION, and )
a/k/a ECHOSPHERE CORPORATION,        )
                                  )
          Defendant.       )

AMBROSE, Chief District Judge.

# OPINION
## and
## ORDER OF COURT

The factual and procedural details of this case are well known to the parties, and I need not repeat them in detail here.  In short, Plaintiff, Janie McCurdy ("Plaintiff"), initiated this action against her former employer, Defendant Echostar Communications Corporation ("Defendant" or "Echostar"), alleging discriminatory treatment  in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), as well as conduct in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA") and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*("ERISA").[1]

---

[1]  In her Amended Complaint, Plaintiff also alleged that she was wrongfully discharged in retaliation for attempting to exercise rights under Pennsylvania's Wage Payment and Collection Law. I dismissed this count on June 28, 2004.  (Docket No. 17).  In addition, on August 11, 2005, I granted

Pending are eight Motions in Limine filed by Defendant with supporting briefs. (Docket Nos. 86-100). Plaintiff opposes Defendant's Motions. (Docket No. 103). The Motions are now ripe for review, and I have considered them in light of the appropriate evidentiary standards. After careful consideration, the Motions in Limine are granted in part and denied in part as set forth more fully below.

## I. ILLUSTRATIVE PHOTOS OF BREAST CARCINOMA

Defendant has moved to preclude Plaintiff from introducing at trial "illustrative photos of breast carcinoma" on the grounds that such photos are irrelevant and prejudicial to Defendant. (Docket No. 86). This Motion in Limine is granted. As an initial matter, there is no indication that the proposed photographs are pictures of *Plaintiff's* own breast cancer and, therefore, they bear no relation to Plaintiff's condition or Plaintiff's claims. Even if the pictures were of Plaintiff, such pictures are wholly unrelated to Plaintiff's claims against Defendant in this employment discrimination case. Because the photographs at issue will not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," the photographs are irrelevant and inadmissible. Fed. R. Civ. P. 401, 402. Even if the photographs had some minimal probative value, that value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Civ. P. 403. Among other things, the photographs are

---

Defendant Summary Judgment on the issue of whether Plaintiff had an "actual disability" under the ADA and/or PHRA (Docket No. 74). I denied Defendant's Summary Judgment Motion on the issue of perceived disability and in all other respects. Id.

highly likely to garner unfair sympathy for Plaintiff from the jurors, severely prejudicing Defendant.

## II.  PLAINTIFF'S FAMILY PHOTOGRAPHS

Defendant has moved to exclude the introduction at trial of Plaintiff's family photographs identified as an exhibit in Plaintiff's pretrial statement. (Docket No. 88). This Motion in Limine is granted.  Family photographs of Plaintiff simply have no probative value in this case and thus are inadmissible under Federal Rules of Evidence 401 and 402.  The only reason for offering the photographs Plaintiff gives in her Response is to "personalize" Plaintiff and establish a rapport with the jury. Pl.'s Resp. at 18.  Even if the photographs had some minimal probative value based on this reason (which they do not), that value would be substantially outweighed by the danger of unfair prejudice to Defendant, confusion of the issues, or misleading the jury.  Fed. R. Evid. 403.

## III. TESTIMONY REGARDING HOW PLAINTIFF'S MEDICAL PROVIDERS MAY HAVE ACTED

Defendant has moved to exclude testimony at trial regarding how Plaintiff's medical providers may have acted in hypothetical situations.  (Docket No. 90).  This Motion in Limine is denied as moot.  Plaintiff has indicated in her Response to Defendant's Motion that she has represented to Defendant in writing that she will not speculate at trial regarding how her doctors may have acted, and will confine her testimony on the subject to a description of her relationships with her doctor(s) and her experiences treating with them.  See Docket No. 103 at 17.  To the extent Defendant objects to this latter testimony, it may raise appropriate objections at

trial.

## IV.  **DEPOSITION TRANSCRIPTS**

Defendant has moved to preclude the introduction at trial of the deposition transcripts of former Echostar employees Jill Harmon and Rick Schanz, and current Echostar employees Charlene Dolfi and Dave Lippert.  (Docket No. 92).  Defendant argues that this deposition testimony is inadmissible hearsay and that none of the testimony is admissible under Federal Rule of Civil Procedure 32, which addresses the use of depositions in court proceedings.   Defendant also argues that Plaintiff failed to comply with Local Rule 16.1.4A.4.

Defendant's Motion is denied as moot.  Plaintiff has indicated in her Response that she intends to call Harmon, Schanz, Dolfi, and Lippert as live witnesses at trial, and that she will use their deposition testimony, if at all, strictly for the purposes of impeachment or to establish admissions by a party-opponent. See Docket No. 103 at 17.  To the extent Defendant objects to these latter uses of the deposition testimony at issue, I will consider such objections at trial.

## V.  **SECOND MEDICAL SLIP**

In this case, Plaintiff has alleged that one of her doctors, Dr. Golani, gave her a medical slip for the thirteen-day period from August 30, 2002 to September 11, 2002.  Plaintiff alleges that she gave the slip to her then-roommate, Janice Bell, to deliver to Plaintiff's supervisor, Richard Schanz.  Mr. Schanz testified at his deposition that Ms. Bell never provided him with such a slip, and Defendant has maintained that no one at Echosphere recalls ever receiving or seeing the alleged slip.

Defendant has moved to preclude the introduction at trial of any evidence relating to this alleged "second medical slip" on the grounds that it is hearsay, has never been produced, and no one at Echosphere recalls seeing the slip. (Docket No. 94). Defendant further argues that admission of testimony regarding the medical slip would violate the Best Evidence Rule. Defendant's Motion is granted in limited part and denied in part as follows.

Defendant first argues that the "second medical slip" must be excluded because it is a "medical record" and, thus, is inadmissible hearsay that cannot be authenticated. In support of its position, Defendant incorporates the arguments set forth in its motion in limine to exclude all of Plaintiff's medical records as exhibits. See infra Section VII. This argument is unavailing. As an initial matter, there is no indication that Plaintiff intends to introduce the actual medical slip at issue into evidence. Indeed, Plaintiff's position is that she provided the only copy of that medical slip to Echostar. Because Plaintiff does not intend to introduce the actual slip as evidence, Defendant's authentication and hearsay arguments with respect to the slip itself are inapposite.

To the extent Defendant argues that any testimony about the medical slip itself must be categorically excluded as hearsay, such argument likewise fails. As an initial matter, Plaintiff's testimony that she provided a medical slip to Echostar (or, more precisely, that she gave a slip to her roommate, Janice Bell, to provide to Echostar) is not hearsay. Likewise, Echostar is entitled to introduce testimony that no one at Echostar received or recalls seeing the slip. Moreover, Plaintiff indicates

in her response that she intents to introduce testimony regarding the slip for purposes other than the truth of the matters asserted therein.  For example, Plaintiff argues that the slip is relevant to show that Defendant had notice of her alleged medical status and to contradict Defendant's argument that Plaintiff failed to provide requested documentation of her absences.  For all of these reasons, Defendant's motion to exclude testimony regarding the slip on hearsay grounds is denied, without prejudice to Defendant's ability to raise these and other objections again at trial, if appropriate.

Next, Defendant argues that the second medical slip should be precluded because Plaintiff never produced the slip to Defendant in discovery.  Defendant argues that because Plaintiff did not produce the slip, it must be assumed that no such record exists.  This argument is without merit.  As set forth above, Plaintiff argues that she gave the only copy of the slip to Defendant during her employment, thus explaining why she was unable to produce the slip in discovery.  Plaintiff's testimony, if believed, would also be evidence that the slip existed at the time in question.[2]

Defendant further argues that the second medical slip is inadmissible under Federal Rule of Evidence 1002, otherwise known as the Best Evidence Rule.  This argument is misplaced.  Rule 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."  Fed.

_____

[2]  Of course, Defendant remains free to attack the alleged weaknesses in Plaintiff's story regarding the medical slip during its cross-examination of Plaintiff and through other evidence at trial.

R. Evid. 1002.  Even assuming Plaintiff intends to prove the contents of the slip at trial, thus triggering the Best Evidence Rule, an exception to the rule exists where a party's failure to produce the original is satisfactorily explained.  Fed. R. Evid. 1004. Among other things, an original is not required, and other evidence of the contents of a writing is admissible, if the original has been lost or destroyed (unless the proponent lost or destroyed them in bad faith) or if the original is in the possession of the opponent and the opponent does not produce it.  Id.  As set forth above, Plaintiff contends that she gave the only copy of the medical slip to Janice Bell to give to Defendant, thus putting it in the possession of the opponent.  Even if, as Defendant argues, Echostar never received the slip, the slip is lost and/or destroyed, and there is no evidence that Plaintiff lost or destroyed the slip in bad faith. Accordingly, under Rule 1004, Plaintiff is not required to introduce the original slip at trial to prove its contents.[3]

    Defendant also contends that Plaintiff should be precluded from offering the alleged statement of her roommate Janice Bell that Bell "intended" to deliver Plaintiff's second medical slip to Rick Schanz.  Defendant argues that this statement may not be used to show that Bell did in fact deliver the slip on the grounds that the statement is inadmissible hearsay.  This portion of Defendant's Motion is denied as premature.  Although Defendant asserts in its motion that Ms. Bell will not testify as a liability witness at trial, Plaintiff indicates in her response that Ms. Bell will testify.  Ms. Bell's live trial testimony will obviate Defendant's hearsay concerns.  I

---

[3] Whether Plaintiff's testimony regarding the slip's contents correctly reflects those contents or whether the slip even existed in the first place, remain questions for the jury.  Fed. R. Evid. 1008.

recognize, as Defendant notes in its brief, that Plaintiff did not list Ms. Bell as a liability witness in her Pretrial Statement.  Whether or not I should allow Ms. Bell's live witness testimony, however, is beyond the scope of Defendant's Motion.  Defendant may raise its objections, if any, to Ms. Bell's live testimony at trial.[4]  To the extent Plaintiff elects not to call Ms. Bell and attempts to introduce the subject statements through other means, Defendant may raise its hearsay objections again at that time.

Defendant also seeks to preclude Plaintiff from explaining her failure to produce the alleged medical slip by claiming that "a medical slip is typically written on a prescription pad, there is only copy [sic] (the original), and it is given to the employee to produce to her employer."  Docket No. 95 at 4-5.  Plaintiff previously listed this explanation as a statement of fact in her summary judgment materials.  I agree with Defendant that Plaintiff's testimony regarding how a medical slip is "typically written" is purely speculative and, therefore, inadmissible.   Thus, Defendant's Motion in Limine is granted on this limited issue.  My ruling, however, does not preclude Plaintiff from testifying that, in this case, Dr. Golani gave her the only copy of the medical slip at issue, provided that Plaintiff has personal knowledge of such a fact.

Finally, Defendant seeks to preclude Plaintiff from testifying at trial that Defendant "obviously lost or destroyed" the medical slip.  This limited portion of

---

[4] In this regard, I note that Plaintiff does list Bell as a damages expert in her pretrial statement and that Defendant lists her as a liability witness.   Thus, it is difficult to see how Defendant will be prejudiced if Plaintiff calls Ms. Bell as a liability witness at trial.

Defendant's Motion is granted.  Plaintiff has no first-hand knowledge of what happened to the alleged medical slip after it left her possession.  Plaintiff remains free to testify that she gave the slip to Janice Bell to deliver to Defendant, and Defendant is free to testify that it never received the slip.  What truly happened to the slip is for the jury to decide.

## VI. EEOC DETERMINATION

Defendant has moved to exclude any evidence relating to the Letter of Determination issued by the Equal Employment Opportunity Commission ("EEOC") on July 11, 2003, regarding Plaintiff's administrative charge of disability discrimination.  (Docket No. 96).  In the letter, the EEOC concluded that the evidence established statutory violations.[5]  Defendant argues that the letter is inadmissible under both Fed. R. Evid. 403 and under Fed. R. Evid. 803(8)(C).  Plaintiff counters that the letter is highly probative, and should be admitted at trial.  For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

In this Circuit, whether or not an EEOC Letter of Determination is admissible is within the discretion of the trial court.  Coleman v. Home Depot, Inc., 306 F.3d 1333, 1344-45 (3d Cir. 2002).  In particular, "a District Court has the discretion to exclude probative EEOC Letters of Determination where the negative factors listed in Rule 403 substantially outweigh the probative value of the EEOC determinations."

---

[5]  A copy of the EEOC Letter of Determination is attached as Exhibit C to Defendant's Brief in Support of Motion in Limine.  (Docket No. 97).

Id. at 1345.[6]  The Rule 403 factors include the dangers of unfair prejudice, confusion of the issues, or misleading the jury, and considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403.[7]  "[T]he assessment of probative value under Rule 403 should take into consideration the proof value of the particular report as and when offered at trial."  Coleman, 306 F.3d at 1345.  Here, the factors weigh against admitting the EEOC letter.

First, the letter poses a danger of unfair prejudice.  "A letter of violation [vs. a letter of reasonable cause]...results in a much greater possibility of unfair prejudice.  A jury may find it difficult to evaluate independently evidence of discrimination after being informed that the EEOC has already examined the evidence and found a violation."  Gilchrist v. Jim Slemons Imports. Inc., 803 F. 2d 1488, 1500 (9th Cir. 1986).  Here, the letter states facts, gleaned during the EEOC investigation, with which the parties will deal at trial; the letter, written under an official government seal, unconditionally states that those facts "establish[] a violation" of the law.  Moreover, the apparently nonexistent physician excuse mentioned in the report is of concern here, as it would be difficult for Defendant

---

[6]  Such a report may, in the first instance, be excluded as untrustworthy under Federal Rule of Evidence 803(8)(C).  In this regard, I have considered the factors outlined in Coleman, 306 F.3d at 1341-42.  There is no evidence regarding the skill or experience of the official, and no allegation of possible motivation problems.  Those factors, therefore, are at least neutral. The letter reflects, and Defendant does not dispute, that both parties were interviewed in connection with the investigation. The letter was signed on July 11, 2003, which suggests a timely investigation.  Therefore, despite any factual inaccuracy, the letter appears to be trustworthy under Rule 803(8)(C).

[7]At least one court has noted a trend away from admitting EEOC letters:  "In recent years...district courts in the Third Circuit have examined EEOC Letters of Determination more closely and have been more reluctant to admit them."  Cambra v. The Restaurant School, No. Civ. A. 04-2688, 2005 WL 2886220, at *3 (E.D. Pa. Nov. 2, 2005).

to rebut that fact with specific evidence.  For these reasons, the potential for unfair prejudice is significant. See  Cambra, 2005 WL 2886220, at **4-5.[8]

Second, the EEOC letter poses the danger of confusion of the issues and misleading the jury.  For example, Plaintiff's EEOC charge asserted several ADA violations; the present litigation involves ERISA, the ADA, and the FMLA.  The EEOC letter, however, does not specify or discuss the "statute(s)" violated; nor does it provide a substantive explanation of the author's conclusions.  Explaining the pertinent distinctions to a lay jury would be needlessly confusing and misleading.

Finally, under the circumstances, the letter is not highly probative.  The factual portion of the analysis referred to consists of 6 sentences, which are contained within two paragraphs; it does not reflect ample detail.  That this report is primarily conclusory, rather than factual, tends to demonstrate reduced probative value.  Coleman, 306 F.3d at 1345.   In addition, the probative value of the letter is diminished by the fact that the parties will be required to present at trial the same evidence considered by the EEOC.  Cambra, 2005 WL 2886220, at **4-5.[9]

Based on the foregoing, I find that the probative value of the report is substantially outweighed by the negative factors listed in Rule 403.  I do, however, issue a caveat along with my decision.  Defendant's Motion and proposed Order are fairly non-specific, requesting that I "preclude EEOC determination."   Although

[8]  Plaintiff argues that any risk of prejudice can be avoided with a limiting instruction to the jury. Pl.'s Resp. (Docket No. 103) at 11-12.  I disagree.  For the reasons set forth herein, I do not believe that a limiting instruction would cure the prejudice to Defendant that the introduction of the letter into evidence would cause in this case.  See Cambra, 2005 WL 2886220, at *5 n.3.

[9]  This also raises concerns regarding cumulative evidence.

Defendant's supporting Brief asks summarily that I "exclud[e] any evidence relating to the EEOC determination," the substance of its discussion is limited to the EEOC letter itself.   I am unwilling to issue the blanket order requested.

Defendant's Motion in Limine, therefore, will be granted in part. I will exclude from evidence the EEOC letter attached as Exhibit C to Defendant's Brief.  I will not, at this time, exclude any and all evidence relating to the EEOC investigation and its resolution.  Instead, I will consider such evidence and objections thereto at the time of trial.

**VII.   Plaintiff's Medical Records, Purported Statements Made By Her Medical Providers, And Plaintiff's Testimony Linking Her Medical Condition To A Particular Medical Diagnosis**

Defendant has moved in limine to preclude as evidence at trial Plaintiff's medical records, purported statements made by Plaintiff's medical providers, and Plaintiff's testimony linking her medical condition or symptoms to a particular medical diagnosis.  (Docket No. 99).  I will address each of these three categories of evidence in turn.

**A.   Plaintiff's Medical Records**

Defendant seeks to preclude the introduction at trial of Plaintiff's medical records on the grounds that the records are inadmissible hearsay, cannot be authenticated, and are irrelevant.  Defendant also argues that the records' probative value, if any, is substantially outweighed by the danger of unfair prejudice.  See Docket No. 99.  This portion of Defendant's Motion is denied without prejudice to Defendant's ability to raise its objections to specific medical records again at trial.

As an initial matter, neither party has provided me with a copy of the specific medical records Plaintiff intends to introduce at trial.  Indeed, Defendant admits in its Brief in Support that "[b]ecause Plaintiff's pre-trial statement combines together hundreds of pages of Plaintiff's medical records as Plaintiff's exhibit 7, Defendant is unable to provide a more specific objection to any particular medical record." Docket No. 99 at 1, n.1.  Without particular records before me, I am unable to ascertain at this juncture whether or not a specific record is admissible.  Thus, I address Defendant's arguments only to the extent Defendant contends that Plaintiff's medical records are inadmissible as a whole, regardless of their individual contents.

Defendant first argues that Plaintiff's medical records are inadmissible hearsay under Federal Rules of Evidence 801 and 802.  I am unable to make such a blanket ruling at this juncture.  Although medical records offered for the truth of the matter asserted therein would be hearsay under Federal Rule of Evidence 801, such records may nevertheless be admissible under the business records hearsay exception set forth in Federal Rule of Evidence 803(6), provided the requirements of that rule are met.  Plaintiff argues in her response that her medical records fall within this exception.  Again, without the records before me, I am unable to rule as to whether or not a specific record meets the requirements of Rule 803(6).  To the extent Defendant contends that particular records do not fall within the Rule 803(6) exception, it may raise its objections again at trial.

Defendant also argues that Plaintiff's medical records constitute "hearsay

within hearsay to the degree they contain information based on what Plaintiff told the healthcare practitioners." <u>See</u> Fed. R. Evid. 805. I disagree. Presumably, Plaintiff will be available at trial to testify as to what she told her medical practitioners. There is no indication that Plaintiff intends to rely on medical records in lieu of such live testimony. In addition, any statements made "for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment," may be admissible under Federal Rule of Evidence 803(4).   Again, I cannot rule at this time as to any particular statement contained in any particular record because those records are not before me.   For the same reason, however, I cannot grant Defendant's Motion to categorically exclude those records.

Defendant next argues that Plaintiff's medical records are inadmissible under Federal Rule of Evidence 901 because Plaintiff has failed to list any of her medical providers as witnesses in this matter and, therefore, she cannot authenticate any of her medical records.  Docket No. 99 at 3.  This argument is unavailing.  Although Rule 901 requires the authentication of evidence as a precondition to admissibility, Rule 902(11) provides a certification procedure by which parties can authenticate records of regularly conducted business activity other than through the testimony of a foundation witness.   <u>See</u> Fed. R. Evid. 902(11); <u>see also</u> Fed. R. Evid. 803(6). Plaintiff indicates in her Response that she intends to use such a certification to authenticate her medical records at trial.  Docket No. 103.  Whether or not Plaintiff

has complied with Rule 902(11) is beyond the scope of Defendant's Motion.  To the extent Defendant objects to Plaintiff's use of a Rule 902(11) certification, it may raise such objections at trial.

Finally, Defendant argues that I must exclude Plaintiff's medical records because portions of those records are irrelevant and/or unfairly prejudicial.  Given the paucity of evidence before me with respect to what information Plaintiff's records specifically contain, I simply am unable to rule on this objection at this time. Defendant may raise its objections to specific medical records once those records are before me at trial.

**B.  STATEMENTS MADE BY PLAINTIFF'S MEDICAL PROVIDERS**

In addition to Plaintiff's medical records and the statements made therein, Defendant seeks to preclude Plaintiff from introducing at trial any other statements made by Plaintiff's medical providers on the grounds that such statements are inadmissible hearsay under Federal Rule of Evidence 802.  Obviously, Plaintiff cannot introduce at trial any out of court statements by her medical providers to prove the truth of the matters asserted, unless an exception to the hearsay rule applies.  See Fed. R. Evid. 801, 802.   As with Plaintiff's medical records, however, Defendant has not provided me with the specific statements to which it objects.  Because it is possible that Plaintiff may offer statements by her medical providers for reasons other than the truth of the matter asserted or may assert that a hearsay exception applies, Defendant's motion to categorically exclude such evidence is denied. Defendant may raise its objections to specific statements at trial.

**C.  PLAINTIFF'S TESTIMONY AS TO CAUSAL LINKS BETWEEN HER MEDICAL CONDITIONS AND SYMPTOMS AND A MEDICAL DIAGNOSIS.**

Defendant argues that Plaintiff should be precluded from testifying at trial about the cause of her medical conditions and/or alleged symptoms because she is not an expert qualified to provide medical testimony.  Docket No. 99 at 5-9.  In particular, Defendant argues that Plaintiff is unqualified to testify that the symptoms of which she complained prior to and following her discharge (rib pain, fatigue, laryngitis, etc.), were caused by her breast cancer.

I agree that Plaintiff is not qualified to render an expert medical opinion at trial that her rib pain, fatigue, and laryngitis were caused by her breast cancer.  See Fed. R. Evid. 701, 702.  Thus, Defendant's motion is granted to this limited extent.  Plaintiff, however, shall not be precluded from testifying as to matters within her own personal knowledge and experience.  See Fed. R. Evid. 602.  For example, nothing in this opinion shall prevent Plaintiff from testifying regarding topics such as:  the symptoms she experienced (rib pain, fatigue laryngitis, etc.), the effects of those symptoms on her abilities, the fact that she was diagnosed with breast cancer, the timing of her diagnosis, the treatment she underwent for her breast cancer, the changes in her symptoms before, during, and after her treatment, and so on.  To the extent Defendant's Motion seeks to preclude such testimony or to preclude evidence that Plaintiff suffered from breast cancer at all, the Motion is denied.

**VIII.  CONSENT DECREE**

Defendant has filed a Motion in Limine to exclude a consent decree filed on September 7, 2005, in ADA litigation that was filed against Defendant in Colorado.

16

(Docket No. 100).  The Motion is filed pursuant to Fed. R. Civ. P. 403 and 408.  Plaintiff counters that the consent decree is probative of Defendant's corporate culture of reckless indifference to the ADA.[10]

I will not exclude the consent decree pursuant to Fed. R. Evid. 408.  Rule 408 speaks to inadmissibility "to prove liability for or invalidity of the claim or its amount."  The rule specifically states that it does not apply to compromise testimony offered for another purpose.  Here, Plaintiff does not seek to offer the consent decree for a prohibited purpose.  Therefore, Rule 408 is, by its terms, inapplicable in this context.

I reach a different conclusion, however, with respect to Rule 403.  According to Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by dangers of unfair prejudice, confusion of the issues, or misleading the jury, and considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Although I agree generally with Plaintiff's proposition that a consent decree in another case may constitute proof of corporate culture, I will not admit such evidence in this instance.

The dangers of unfair prejudice, confusion of the issues, and misleading the jury are significant here.  The decree itself recites the jury's verdict, including the amounts awarded for back pay and compensatory and punitive damages.  It further states the amounts that Defendant paid in order to compromise the claim.  Placing these numbers before the jurors might interfere with their ability to independently

---

[10]  A copy of the Consent Decree is attached as Exhibit 1 to Plaintiff's Response to Defendant's Motions in Limine.  (Docket No. 103).

fix damages based on the evidence before them.  Moreover, the subject decree and associated verdict were entered in a failure to hire case involving blindness, which is factually and legally distinguishable from the case at bar.  The decree omits clarifying information such as the theories of liability and factual details involved in the compromised case.  Placing before this jury the liability verdict in an unrelated and materially distinguishable action poses an appreciable danger of misleading and confusing jury members.

Furthermore, the characteristics that pose the dangers of unfair prejudice, confusion, and misinformation also raise the specter of undue delay.  In order to counter the information contained in the decree, Defendant will be required to present a significant amount of evidence regarding the unrelated lawsuit.  In essence, a "mini trial" becomes possible.  In all, there are substantial negative concerns associated with admission of the decree.

In contrast, the probative value of the decree is not substantial.  In her opposition, Plaintiff first recites evidence of her conversation with Defendant's HR specialist as evidence of Defendant's corporate culture.  It is unclear how that conversation, which is evidence in its own right and wholly unrelated to the Colorado litigation or its outcome, supports admission of the consent decree.  It is further ambiguous how the consent decree impeaches Defendant's claim that it understood and abided by the ADA in its treatment of Plaintiff.  As Plaintiff asserts, Defendant's "actual conduct in this case," as alleged by Plaintiff, would impeach that claim; the document itself has no bearing thereon.

The consent decree requires Defendant to implement certain ADA policies. This requirement, Plaintiff asserts, demonstrates that Defendant had no ADA policies and procedures in place prior to the time of the decree. This, in turn, purportedly demonstrates "reckless indifference to the ADA." This, again in turn, purportedly supports Plaintiff's claim for punitive damages. The existence of a consent decree requiring the implementation of certain policies and procedures, however, does not demonstrate the prior absence of such policies and procedures. Clearly, Plaintiff may prove the nature or absence of Defendant's ADA policies through other avenues. Although the consent decree is not utterly without probative value, I am unconvinced that the value is significant here. In sum, I conclude that the probative value of the consent decree is substantially outweighed by the negative factors enumerated in Rule 403.

As a final matter, Defendant's Motion seeks the exclusion of the testimony of Ms. Kittle and Mr. Gaar, two attorneys involved in the Colorado litigation. Because Plaintiff's opposition papers do not address that aspect of Defendant's Motion, I assume that Plaintiff does not intend to offer the challenged testimony or does not oppose Defendant's objection. Therefore, I will grant the Motion to that extent.

 For the foregoing reasons, Defendant's Motion in Limine to Preclude Evidence of Consent Decree is granted in part. Again, however, my decision is limited. Defendant's Motion seeks exclusion of "any evidence relating to the September 7, 2005 Consent Decree." I am unwilling to issue such a broad Order. My decision today encompasses only the consent decree document and the testimony of Ms. Kittle and

Mr. Gaar.   I will consider objections to all other evidence "relating to" the decree at the time of trial.

* * * * * * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANIE L. MCCURDY,                              )
                                               )
            Plaintiff,                         )
                                               )
   -vs-                                        )
                                                 Civil Action No.  04-86
                                               )
ECHOSTAR COMMUNICATIONS CORPORATION,  )
a/k/a ECHOSTAR SATELLITE CORPORATION, and )
a/k/a ECHOSPHERE CORPORATION,                  )
                                               )
            Defendant.                         )

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **24th** day of February, 2006, upon consideration of Defendant's Motions in Limine (Docket Nos. 86, 88, 90, 92, 94, 96, 98, 100), it is ORDERED as follows:

1.  Defendant's Motion in Limine to Preclude "Illustrative Photos of Breast Carcinoma" (Docket No. 86) is GRANTED.

2.  Defendant's Motion in Limine to Preclude Plaintiff's Family Photographs (Docket No. 88) is GRANTED.

3.  Defendant's Motion in Limine to Preclude Testimony Regarding How Plaintiff's Medical Providers May Have Acted (Docket No. 90) is DENIED as moot.

4.  Defendant's Motion in Limine to Preclude Deposition Transcripts (Docket No. 92) is DENIED as moot.

5.  Defendant's Motion in Limine to Preclude the "Second Medical Slip" (Docket

No. 94) is GRANTED in part and DENIED in part as set forth more fully in the Opinion accompanying this Order.

6.   Defendant's Motion in Limine to Preclude EEOC Determination (Docket No. 96) is GRANTED in part and DENIED in part as set forth more fully in the Opinion accompanying this Order.

7.   Defendant's Motion in Limine to Preclude Plaintiff's Medical Records, Purported Statements Made by Her Medical Providers, and Plaintiff's Testimony Linking Her Medical Condition or Symptoms to a Particular Medical Diagnosis (Docket No. 98) is GRANTED in part and DENIED in part as set forth more fully in the Opinion accompanying this Order.

8.   Defendant's Motion in Limine to Preclude Evidence of Consent Decree (Docket No. 100) is GRANTED in part and DENIED in part as set forth more fully in the Opinion accompanying this Order

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge